Harold WADDELL, Appellant,

v.

PEET'S FEEDS, INC., a corporation, Appellee.

No. 60056.

Supreme Court of Iowa.

May 17, 1978.

James E. Thorn and John D. Sens, of Johnson, Stuart, Tinley, Peters & Thorn, Council Bluffs, for appellant.

C. R. Hannan, Council Bluffs, and David A. Johnson and Ronald H. Stave, Omaha, Neb., for appellee.

Considered by MOORE, C. J., and Le-GRAND, REES, HARRIS, and McCOR-MICK, JJ.

LeGRAND, Justice.

This matter is here for further review of a decision of the Court of Appeals reversing the trial court's award of a new trial because of inadequacy of damages. We affirm the Court of Appeals and reinstate the jury verdict.

Plaintiff sued defendant for personal injuries suffered when he fell from a catwalk on defendant's premises. The circumstances of the accident are immaterial, and we limit our discussion to damages and

the trial court's order granting plaintiff a new trial. In considering an appeal from the granting of a new trial, we accord the trial court considerable discretion. Nevertheless the discretion is not unlimited, and we reverse upon a finding that it has been abused. *Kaiser v. Stathas*, 263 N.W.2d 522 (Iowa 1978); *Householder v. Town of Clayton*, 221 N.W.2d 488, 492–93 (Iowa 1974); *Moore v. Bailey*, 163 N.W.2d 435, 436–37 (Iowa 1968); and Rule 14(f)(3) and (4), Rules of Appellate Procedure.

The sole issue before us is whether, as the Court of Appeals found, the trial court abused its discretion in granting plaintiff a new trial on the ground the verdict was inadequate. The dispute is narrowly confined and depends largely on Dr. C. M. Adli, the only witness giving expert medical testimony. We discuss his evidence later.

The evidence shows that at the time of trial plaintiff had incurred medical and hospital expense of $2,226.95 and that he had suffered loss of earnings in the amount of $2,300.00. His total of special damages at that time was thus $4,526.95. There was also evidence of pain and suffering and of substantial permanent disability.

Dr. Adli predicted some future medical and hospital expense was probable. This was dependent on whether plaintiff required additional surgery. The operation, described by the doctor as triple-arthrodesis, would immobilize "three or four bones" in plaintiff's foot, which in turn would stop his pain. The doctor testified on direct examination that plaintiff would have to submit to this surgery if he "kept having trouble with his right heel or if his problem increases." In that event he would be hospitalized for approximately ten days and off work from four to five months. Although the evidence is somewhat vague as to the costs involved, it is clear they would approach $1,500.00 or $2,000.00. In addition plaintiff would lose between $4,000.00 and $5,000.00 in future earnings.

The trial court concluded the jury allowed plaintiff his accrued special damages and the estimated cost of future medical expense and loss of earnings, which the trial court found to be in the exact amount of the verdict. With this as a premise, the trial court determined the verdict was inadequate because it allowed nothing for pain and suffering or for disability.

We are unable to agree with the rationale by which the trial court reached this result. It is by no means certain the jury arrived at its verdict in the manner the trial court says it did.

■ In this regard we point out the jury was not obliged to accept the testimony that plaintiff would probably require additional surgery with its accompanying expense and loss of earnings, even if that evidence stood unchallenged. However, Dr. Adli himself cast substantial doubt on this whole matter. We quote from his cross examination:

"Q. Doctor, as I understand your testimony, the condition of arthritis * * * progresses in some patients and * * * in other patients it doesn't progress; is that a fair statement?

A. Yes.

Q. And it is possible in some patients who have suffered the type of injury that this man has to have a progression for a period of time and then have that arthritic condition arrest for a period of time, maybe to start up again? Is that possible?

A. Yes.

Q. Is it also possible to have the arthritic condition progress continuously * * * with some patients and maybe never arrest and become progressively worse?

A. Yes, it is true.

Q. And is it possible to have the arthritic condition progress for a short period of time and then never progress any further? Is that a possibility with some patients?

A. Yes; it is possible.

Q. So far as this man is concerned, doctor, do you have him scheduled for surgery right now?

A. No, I wouldn't.

Q. Why is that?

A. Because he doesn't have enough pain.

\* \* \* \* \* \*

I'm not offering him a rose garden; I'm just saying that if he has intolerable pain, that is the last resort; and I want him to come and tell me that he has intolerable pain, that he cannot do anything, he just walks a block or two, and he wants to have something done for it. Then I would schedule him for surgery.

Q. And that, apparently, is not his condition now?

A. No.

\* \* \* \* \* \*

Q. So you are not able to say at this point in time with certainty that Mr. Waddell is going to have to have further surgery; it all depends on what the situation is with his arthritic condition and that would develop there in the future?

A. I have no way of saying one hundred percent that he was going to have the operation."

█ We do not know—and should not guess—whether the jury accepted or rejected the testimony as to the necessity for future surgery. Therefore we cannot say the purpose for which damages in excess of the proven specials were awarded. As we said in *Lantz v. Cook*, 256 Iowa 409, 413, 127 N.W.2d 675, 677 (1964), and repeated recently in *Kaiser v. Stathas*, 263 N.W.2d at 525:

"In jury trials controverted issues of fact are for the jury to decide. That is what juries are for. To hold that a judge should set aside a verdict just because he would have reached a different conclusion would substitute judges for juries. It would relegate juries to unimportant window dressing. That we cannot do · \* \* \*."

█ Our recent decision in *Kaiser v. Stathas*, 263 N.W.2d 522 (Iowa 1978), virtually dictates the result here. It would serve no purpose to repeat at length what we said there. *Kaiser* and the authorities upon which it relies establish the following principles which govern our consideration in cases of this kind:

1. In granting or denying new trials, the trial court has wide but not unlimited discretion.

2. The fact finder is not obliged to accept expert testimony, even if it is uncontradicted, although testimony should not be arbitrarily and capriciously rejected.

3. In determining if a verdict is either excessive or inadequate, each case must be determined on its own special facts.

4. Courts should see that a verdict fairly and adequately compensates a plaintiff for the damages suffered, but the amount of damages to be awarded is peculiarly a jury, not a court, function.

5. The fact that a court may have reached a different result is no ground for setting aside a jury verdict and awarding a new trial.

█ In the present case there is nothing to indicate prejudice or passion. There is no claim of misconduct by the jurors. The jury was properly instructed as to pain, suffering, and disability. Plaintiff does not allege error in the trial itself except in connection with the instructions on contributory negligence. However, if there was error in these instructions, it was rendered harmless by the jury's verdict for plaintiff.

█ On the record before us, we conclude the Court of Appeals was right in holding the trial court abused its discretion in granting plaintiff a new trial. If the jury rejected the testimony concerning future surgery, as it had a right to do, there is no legal basis upon which to set the verdict aside. Courts are not permitted to select one alternative theory to invalidate a jury verdict when another, just as reasonable and just as well supported by the evidence, would uphold it. We therefore affirm the judgment of the Court of Appeals and remand the case to the district court for entry of judgment accordingly.

Judgment of Court of Appeals AFFIRMED.